United States District Court
Southern District of Texas

**ENTERED**

March 13, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JULIAN MARS MCKITHAN, (TDCJ # 01496495)   Plaintiff, | § § § § § | CIVIL ACTION NUMBER 4:22-cv-01422 |
| versus | § § § | JUDGE CHARLES ESKRIDGE |
| DR. ROBIN ROTHROCK, *et al*,   Defendants. | § § § | |

**OPINION AND ORDER ON DISMISSAL**

The motion to dismiss by Defendants Robin Rothrock, Kate Christopher, and Jamie Williams is granted. Dkt 30.

The civil-rights action by Plaintiff Julian Mars McKithan is dismissed.

### 1.  Background

Plaintiff is an inmate of the Texas Department of Criminal Justice–Correctional Institutions Division. He proceeds here *pro se* and *in forma pauperis*.

In May 2022, he filed a complaint under 42 USC §1983, alleging that Doctor Robin Rothrock, Nurse Practitioner Kate Christopher, Practice Manager Jamie Williams, and Medical Records Technician Gail Wilson violated his Eighth Amendment rights by failing to provide him with adequate medical care. Dkt 1.

In September 2023, Plaintiff filed an amended complaint, which added claims against them for retaliation, negligence, equal protection violations, and a failure to investigate grievances. Dkt 20. He also added new claims against several new defendants, but these claims and defendants have been previously dismissed. Dkt 25.

The amended complaint alleges that before Plaintiff arrived at TDCJ in 2008, he suffered from seizures due to a head injury from a 1991 car accident. Dkt 20 at 3. He also had lingering effects from ankle reconstruction surgery due to the same accident. Ibid. Based on these conditions, TDCJ officials issued him medical and administrative restrictions and passes for a bottom bunk, no climbing, no working with machinery with moving parts, no heat, no humidity, and a 4-hour daily work limit. Ibid.

In 2015, Plaintiff was diagnosed with arthritis in his back and shoulders, degenerative disk disease, spondylitis, and chronic shoulder pain. Ibid. Based on these conditions, Plaintiff was issued medical and administrative passes for no walking on wet or uneven surfaces, no reaching over his shoulders, and no lifting over 30 pounds. Ibid. Plaintiff alleges that these restrictions and passes were "permanent." Ibid.

In February 2018, Plaintiff was transferred to the Estelle Unit for physical therapy. Id at 4. While he was there, non-defendant Doctor F/N/U Hall revoked all of his medical and administrative restrictions and passes in retaliation for Plaintiff having filed grievances against Hall. Ibid. Plaintiff tried to get the passes reinstated while he was at the Estelle Unit, but he was transferred back to the Wynne Unit before the issue was corrected. Ibid.

In March 2018, Plaintiff tried to correct the medical restrictions and passes issue with Christopher. Ibid. Christopher reinstated some of the medical passes, but only on a temporary basis. Ibid. He told Plaintiff that she would make the restrictions permanent "later." Ibid.

Between 2018 and 2019, Plaintiff developed breathing issues. Ibid. He contends that he saw Christopher and another nurse practitioner multiple times but didn't receive adequate medical care from either of them. Ibid.

In mid-2019, Plaintiff was referred to a lung specialist and diagnosed with asthma. Ibid. Despite this new diagnosis, Christopher refused to issue additional medical restrictions and passes to reflect his new limitations. Ibid.

2

Plaintiff filed a grievance about Christopher's refusal to add restrictions and passes. Ibid.

At a December 2019 clinic appointment, Christopher asked Plaintiff about one of his administrative passes. Ibid. When Plaintiff responded that it was because of his aggravated sexual assault conviction, Christopher's demeanor changed, she deleted the pass from his record, and she again refused to issue any medical restrictions or passes to account for his asthma. Id at 4–5. Plaintiff filed a grievance about this action. Ibid.

In March 2020, Plaintiff had his first visit with Rothrock. Id at 5. Before Rothrock could review his medical records, Christopher entered the room, sent Plaintiff outside, and talked privately with Rothrock. Ibid. Plaintiff alleges that he overheard Christopher tell Rothrock that "he" refuses examinations and treatments, that he is a sex offender, and that he has written grievances against medical staff. Ibid. Christopher then left, and Rothrock called Plaintiff back into the room. Ibid. Without examining Plaintiff, Rothrock revoked his temporary medical restrictions and passes and told him she wouldn't reissue them until he had new medical evaluations. Ibid.

Shortly thereafter, Plaintiff learned that his medical file contained two refusals of treatment, both of which he alleges are forged. Id at 5–6. Based on his discovery of these documents, as well as the ongoing problems with his medical restrictions and passes, Plaintiff filed grievances concerning the allegedly inadequate medical care he was receiving from Rothrock and Christopher. Ibid. Williams, in her capacity as Practice Manager, responded to these grievances with information Plaintiff alleges was either false or based on falsified medical records. Ibid.

In March 2020, Plaintiff filed grievances against Rothrock and Christopher, alleging that they conspired with each other to retaliate against him for having filed the grievances. Id at 6.

On May 1, 2020, Wynne Unit officials ordered Plaintiff to pack his property and move from his cell on the bottom

3

row to a new cell on an upper row. Ibid. As part of the move, Plaintiff was required to carry his own property up the stairs. Ibid. After several trips up and down the stairs, he suffered intense back pain, passed out, and had a seizure. Ibid. Another inmate saved him from "rolling off" the third-level row by grabbing Plaintiff's shirt. Ibid. Plaintiff was transported to the medical department, where he felt a "disk pop back in place," but he continued to suffer back pain for days after the event. Ibid. He doesn't allege that he was denied care or treatment for this injury.

In June 2020, Plaintiff told Major Boyd about the allegedly improper revocation of his medical restrictions and passes. Ibid. Boyd instructed Rothrock to restore Plaintiff's bottom bunk restriction if there was any medical basis for it, and Rothrock did so. Ibid.

Between May 2020 and January 2021, Plaintiff was reassigned to a new cell at least sixteen times, moving his own property each time. Id at 6–7. Each of these moves caused further injury to his back and shoulders. Ibid. Between May 2020 and June 2021, he also submitted multiple requests for clinic visits due to severe pain. Id at 7. He doesn't allege that he wasn't provided with medical care in response to these requests.

At a July 2020 appointment with Rothrock, she told Plaintiff that she was tired of seeing and hearing his name in meetings, discussions and reports concerning his conspiracy claims. Ibid. Rothrock refused to reissue his medical restrictions and passes based on radiology reports from 2015, stating that she considered them "frivolous" because they were prepared by technicians rather than physicians. Ibid. Plaintiff alleges that the reports were actually prepared by physicians but that Rothrock didn't see that. Ibid. Plaintiff filed a grievance after this appointment based on Rothrock's lack of professionalism and unethical actions. Ibid.

In October 2020, an orthopedic spine specialist at John Sealy Hospital in Galveston determined that Plaintiff needed back surgery for his degenerated and herniated disks. Id at 8. In June 2021, an orthopedic shoulder

specialist determined that Plaintiff's arthritis had progressed to the point that both shoulder joints needed replacement. Ibid.

After those evaluations, prison and medical officials reissued Plaintiff's medical restrictions and administrative passes. Ibid. And as of November 2022, he has had corrective back surgery. Ibid.

Plaintiff alleges that Williams violated his civil rights by failing to conduct an adequate investigation into his grievances and by failing to ensure that he received adequate medical care. Id at 9. He alleges that Rothrock and Christopher were deliberately indifferent to his need for medical care and his pain and suffering. Ibid. He alleges that all three Defendants conspired to deny him medical care and treatment in retaliation for him filing grievances. Ibid. He contends that Rothrock's refusal to issue medical restrictions and passes deprived him of equal protection. Ibid. And he alleges that Rothrock and Christopher were negligent in providing him with medical care and treatment. Id at 10.

As relief, Plaintiff seeks a declaratory judgment finding that Defendants violated his rights. Id at 11–12. He seeks an injunction requiring Defendants to ensure that future surgeries are performed in a timely fashion, that he be seen by a medical specialist "whenever needed," that he be referred to a pain management specialist, that he receive medical supplies in a timely fashion, and that prohibits Defendants from retaliating against him. Id at 12. He also seeks an award of money damages. Id at 12–13.

Defendants Rothrock, Christopher, and Williams responded to the amended complaint with a lengthy motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt 30. In their motion, Defendants contend that the amended complaint doesn't allege facts showing that Plaintiff's constitutional rights were violated. Id at 27–39. They contend that they are protected from liability by qualified immunity. Id at 26–41. They also contend that Plaintiff's negligence claims are barred by the Texas Tort Claims Act. Id at 24–26.

TDCJ has been unable to identify a medical records technician named Gail Wilson who worked at the Wynne Unit when Plaintiff was there, so she hasn't been served. Dkt 29.

### 2. Legal standard

Plaintiff's complaint is construed liberally because he proceeds *pro se. Coleman v United States*, 912 F3d 824, 828 (5th Cir 2019), citing *Erickson v Pardus*, 551 US 89, 94 (2007, *per curiam*).

To state a valid claim under § 1983, a plaintiff must (i) allege a violation of rights secured by the Constitution or laws of the United States, and (ii) demonstrate that the alleged violation was committed by a person acting under color of state law. *West v Atkins,* 487 US 42, 48 (1988); *Gomez v Galman*, 18 F4th 769, 775 (5th Cir 2021, *per curiam*). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§]1983 must show deprivation of a federal right." *Nesmith v Taylor,* 715 F2d 194, 195 (5th Cir 1983, *per curiam*). The second element means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *Frazier v Board of Trustees of Northwest Mississippi Regional Medical Center*, 765 F2d 1278, 1283 (5th Cir 1985).

Dismissal is appropriate "'when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Ass'n, Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998). Rule 12(b)(1) permits a defendant to seek such dismissal. Once put at issue, the party asserting jurisdiction has the burden to establish by a preponderance of the evidence that it exists. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008). Indeed, a presumption against subject-matter jurisdiction "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff's complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) allows the defendant to seek dismissal if the plaintiff fails "to state a claim upon which relief can be granted."

Reading these Rules together, the Supreme Court has held that Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), quoting *Bell Atlantic Corp v Twombly*, 550 US 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, the complaint "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v Taylor*, 503 F3d 397, 401 (5th Cir 2007), quoting *Twombly*, 550 US at 544.

A complaint must therefore contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 US at 570. A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 US at 678, citing *Twombly*, 550 US at 556. This standard on plausibility is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 US at 678, quoting *Twombly*, 550 US at 556.

Review on a motion to dismiss under Rule 12(b)(6) is constrained, being generally limited to the contents of the complaint and its attachments. *Brand Coupon Network LLC v Catalina Marketing Corp*, 748 F3d 631, 635 (5th Cir 2014). The reviewing court "must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Walker v Beaumont Independent School District*, 938 F3d 724, 735 (5th Cir 2019) (cleaned up). But courts "do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'"

7

*Rx Solutions, Incorporated v Caremark, LLC,* 164 F4th 436, 441 (5th Cir 2026), quoting *Hodge v Engleman,* 90 F4th 840, 843 (5th Cir 2024) (cleaned up). And while *pro se* litigants are held to less stringent pleading standards than attorneys, they aren't excused from the requirement to allege sufficient facts to state a plausible claim. See *Taylor v Books A Million Inc*, 296 F3d 376, 378 (5th Cir 2002); *Toole v Peak*, 361 F Appx 621, 621 (5th Cir 2010, *per curiam*) (self-represented litigant "still must actually argue something that is susceptible of liberal construction").

### 3. Discussion

#### a. Injunctive relief

Plaintiff seeks injunctive relief in the form of an order dictating how his future medical care will be handled and prohibiting Defendants from retaliating against him.

Article III of the Constitution limits federal courts to considering "Cases" and "Controversies." *Summers v Earth Island Institute*, 555 US 488, 492 (2009). This limitation is reflected in the doctrine of standing. Id at 493. This "requires federal courts to satisfy themselves that 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" Ibid, quoting *Warth v Seldin*, 422 US 490, 498 (1975). A federal plaintiff must demonstrate standing for each type of relief sought. Ibid.

To have standing to seek injunctive relief, the plaintiff must show (i) an injury in fact (ii) that is fairly traceable to the defendants' actions and (iii) that will likely be redressed by the requested relief. *Stringer v Whitley*, 942 F3d 715, 720 (5th Cir 2019), citing *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992). The party seeking to invoke federal jurisdiction must establish all three elements. Ibid.

At issue here are the *redressability* and *injury-in-fact* elements. "The redressability requirement limits the relief that a plaintiff may seek to that which is likely to remedy the plaintiff's alleged injuries." *Stringer*, 943 F3d at 720,

8

citing *Steel Company v Citizens for a Better Environment*, 523 US 83, 103 (1998). A plaintiff seeking injunctive relief can show *redressability* by alleging facts showing a continuing or threatened future injury. Ibid. Past injuries aren't enough. *Book People, Incorporated v Wong*, 91 F4th 318, 328 (5th Cir 2024). Further, the "continuing or threatened future injury, like all injuries supporting Article III standing, must be an injury in fact." *Stringer*, 942 F3d at 720. An *injury-in-fact* must be "(1) potentially suffered by the plaintiff, not someone else; (2) 'concrete and particularized,' not abstract; and (3) 'actual or imminent,' not 'conjectural' or 'hypothetical.'" Id at 720–21 (citations omitted).

Plaintiff's amended complaint doesn't satisfy these requirements. He doesn't allege facts establishing redressability because he seeks relief based solely on past injuries rather than a threat of continuing or future injuries. And he doesn't allege facts establishing an injury-in-fact because any future injury is hypothetical.

Indeed, Plaintiff alleges that as of November 2022, he has undergone the necessary back surgery and his medical restrictions and passes have been fully restored. In addition, since filing his complaint, Plaintiff has been transferred to a different TDCJ unit where he is no longer in contact with or being treated by Defendants.

Under these circumstances, the possibility of any future injury caused by Defendants can only be characterized as conjectural. Plaintiff thus lacks Article III standing to seek injunctive relief against Defendants.

The motion by Defendants to dismiss the claims for injunctive relief will be granted. Dkt 30. The claims for injunctive relief by Plaintiff will be dismissed without prejudice.

b.   Failure to investigate grievances

Plaintiff contends that Williams is liable to him for damages because she failed to adequately investigate the grievances he filed against Rothrock and Christopher.

Inmates don't have a constitutional right to have their prison grievances resolved to their satisfaction. See *Geiger v Jowers*, 404 F3d 371, 374 (5th Cir 2005, *per curiam*). Absent such a right, a prison official's failure to investigate a grievance doesn't violate a prisoner's constitutional rights, making a §1983 due process claim based on the alleged failure to investigate grievances "indisputably meritless." *Hill v Walker*, 718 F Appx 243, 250 (5th Cir 2018, *per curiam*).

Plaintiff's allegations against Williams based on a failure to investigate his grievances don't state a claim for a constitutional violation and so can't support liability under §1983.

The motion to dismiss by Williams will be granted. The claims against her will be dismissed with prejudice.

c.   Deliberate indifference

Plaintiff claims that Defendants are liable for damages because they were deliberately indifferent to his need for medical care and treatment and his alleged need for medical restrictions and passes.

The Eighth Amendment's prohibition against cruel and unusual punishment guarantees prisoners the right to have their serious medical needs addressed. See *Gobert v Caldwell*, 463 F3d 339, 345 (5th Cir 2006). Prison officials violate that right when they evince *deliberate indifference* to a prisoner's serious medical needs, resulting in the unnecessary and wanton infliction of pain. *Wilson v Seiter*, 501 US 294, 297 (1991).

But the standard for *deliberate indifference* is an "extremely high" one to meet. *Domino v Texas Department of Criminal Justice*, 239 F3d 752, 756 (5th Cir 2001). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

10

he must also draw the inference.'" *Smith v Brenoettsy*, 158 F3d 908, 912 (5th Cir 1998), quoting *Farmer v Brennan*, 511 US 825, 837 (1994). The plaintiff must also allege facts showing that the defendant, despite knowing of the risk, "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F3d at 756, quoting *Johnson v Treen*, 759 F2d 1236, 1238 (5th Cir 1985).

Actions and decisions by officials that are "merely inept, erroneous, ineffective or negligent" don't amount to deliberate indifference. *Doe v Dallas Independent School District*, 153 F3d 211, 219 (5th Cir 1998); see also *Farmer*, 511 US at 835. This means that neither medical malpractice nor negligent treatment present an issue of federal constitutional dimension. *Mendoza v Lynaugh*, 989 F2d 191, 195 (5th Cir 1993). Further, any decision on whether to provide more or different treatment "is a classic example of a matter for medical judgment." *Estelle v Gamble*, 429 US 97, 107 (1976).

Plaintiff hasn't alleged facts satisfying this extremely high standard. He acknowledges that he had multiple appointments with Christopher during 2019 at which he received medical care, although he characterizes the care as "inadequate." He admits that he was referred to a "lung specialist" in 2019, an orthopedic specialist for his back in 2020, and an orthopedic specialist for his shoulders in 2021. He alleges that shortly after Rothrock arrived at the Wynne Unit in 2020, unit-wide restrictions were put in place limiting clinic visits to emergencies and COVID-19 patients. Despite these limitations, he doesn't allege that he was denied medical treatment during that time.

Plaintiff's dissatisfaction with the medical care he received doesn't amount to evidence of deliberate indifference. And his conclusory allegations that Defendants acted with deliberate indifference aren't sufficient to maintain this claim. See *Fernandez-Montes v Allied Pilots Association*, 987 F2d 278, 284 (5th Cir 1993):

"Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."

It's also apparent from the amended complaint that Plaintiff's claims don't arise from an alleged lack of medical care but instead from the revocation of his medical restrictions and passes. But a prisoner's disagreement with his medical classification doesn't state a constitutional claim. *Winston v Stacks*, 243 F Appx 805, 807 (5th Cir 2007, *per curiam*), citing *Wilson v Budney*, 976 F2d 957, 958 (5th Cir 1992, *per curiam*). Plaintiff's complaints concerning Defendants' actions relating to his medical restrictions and passes don't establish the deliberate indifference necessary to support an Eighth Amendment claim. He isn't entitled to relief from Defendants on this basis.

The motion by Defendants to dismiss the claims against them based on deliberate indifference will be granted. The claims by Plaintiff based on deliberate indifference will be dismissed with prejudice.

d.   Retaliation

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right to file grievances about the medical care he received.

The Fifth Circuit teaches that prison officials "may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct." *Morris v Powell*, 449 F3d 682, 684 (5th Cir 2006), citing *Woods v Smith*, 60 F3d 1161, 1164 (5th Cir 1995). A *prima facie* case of retaliation in the prison context requires the plaintiff to show that (i) he exercised a specific constitutional right, (ii) the defendant intended to retaliate against him for the exercise of that right, (iii) the defendant took a retaliatory adverse action, and (iv) the plaintiff's exercise of the constitutional right caused the retaliatory adverse action. *Johnson v Rodriguez*, 110 F3d 299, 310 (5th Cir 1997). The adverse acts must be sufficiently serious to rise to the level of a constitutional violation. *Morris*, 449 F3d at 684–85. That standard requires acts

12

that "would chill or silence a person of ordinary firmness from future First Amendment activities." Id at 685–86, quoting *Crawford-El v Britton*, 93 F3d 813, 826 (DC Cir 1996).

Defendants contend that Plaintiff fails to establish the fourth element. To allege the *causation* element in a retaliation claim, the plaintiff must either "produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F3d at 1166. The plaintiff's personal belief that he's the victim of retaliation isn't sufficient. *Johnson*, 110 F3d at 310.

Plaintiff's allegations don't meet this standard. He alleges that a person named Hall at the Estelle Unit canceled all of his medical restrictions and passes in retaliation for Plaintiff filing grievances against him. But Hall isn't a defendant in this action.

*As to Christopher*, Plaintiff alleges that she reinstated some, but not all, of his medical restrictions and passes when he got to the Wynne Unit in 2018. But he alleges no facts showing that Christopher knew that he had filed grievances against Hall or any other TDCJ employee at that time. Nor does he allege facts showing that Christopher had any other motive to retaliate against him at that time. Absent evidence that she knew of his exercise of his constitutional rights, he doesn't allege a viable retaliation claim against her based on the grievances he filed against Hall.

Plaintiff also alleges that Christopher retaliated against him by telling Rothrock that he had refused treatment and exams, was a sex offender, and had filed grievances against medical staff. But to prove a claim of retaliation, a prisoner must show that he "suffered a concrete, tangible harm" as a result of the action. *Hudson v University of Texas Medical Branch*, 441 F Appx 291, 293 (5th Cir 2011, *per curiam*). Christopher's decision to share her views about Plaintiff with Rothrock may have altered Rothrock's opinion of him, but he doesn't allege facts showing that Christopher's act of expressing her opinions

to Rothrock directly resulted in any concrete or tangible harm. His personal belief that these statements were made in retaliation for his prior filing of grievances isn't sufficient to sustain this claim against Christopher.

*As to Rothrock*, Plaintiff alleges that she revoked his medical restrictions and passes after learning from Christopher that he had refused medical exams and treatment, that he is a sex offender, and that he "wrote some grievances on medical staff." Dkt 20 at 5. At a later appointment, Rothrock also allegedly told Plaintiff that she was tired of hearing his name at meetings, in discussions, and in reports. Id at 7. After saying that, she refused to reinstate his medical restrictions and passes based on the five-year-old medical assessments in Plaintiff's file because they were prepared by technicians rather than physicians. Ibid.

Even liberally construed, these allegations don't show that Rothrock retaliated against Plaintiff for his exercise of a constitutional right. For example, to the extent that Plaintiff contends that Rothrock retaliated against him because he's a sex offender, generalized bias against sex offenders doesn't implicate Plaintiff's exercise of a constitutional right. See *Sorrow v Executive Director TDCJ*, 2017 WL 5068155, *7 (SD Tex). The same is true for a contention that Rothrock retaliated against him for refusing medical exams and treatments. Any decision by Rothrock to rely only on physicians' records rather than five-year-old reports from radiation technicians is an exercise of her medical judgment that won't support a retaliation claim.

Plaintiff doesn't allege facts demonstrating that Defendants intended to retaliate against him, and the chronology of events he presents doesn't support an inference of such an intent. His conclusory allegations of retaliation based on his personal beliefs are legally insufficient to state a claim for retaliation against Defendants.

14

The motion by Defendants to dismiss the retaliation claims against them will be granted. The claims by Plaintiff for retaliation will be dismissed with prejudice.

### e.   Equal protection

Plaintiff alleges that Rothrock denied him equal protection by refusing to reissue his medical restrictions and passes.

To establish an equal protection claim, the plaintiff must show that two or more classifications of similarly situated persons were treated differently. *Gallegos-Hernandez v. United States*, 688 F3d 190, 195 (5th Cir 2012, *per curiam*). Once that element is established, courts consider the level of scrutiny to apply. Ibid. "[S]trict scrutiny is appropriate only where a government classification implicates a suspect class or a fundamental right. . . . Otherwise, rational-basis review applies and this court need only determine whether the classification is rationally related to a legitimate government interest." Ibid, quoting *Rublee v Fleming,* 160 F3d 213, 217 (5th Cir 1998, *per curiam*).

Plaintiff's claim fails for two reasons. First, he doesn't identify a class of prisoners who are similarly situated to him but who are being treated differently from him. Second, even assuming he's claiming he's being treated differently from other inmates with similar physical disabilities, "disability is not a suspect classification like race, alienage, or national origin, or a quasi-suspect classification like gender." *D.C. v Klein Independent School District*, 711 F Supp 2d 739, 748 (SD Tex 2010), citing *City of Cleburne, Texas v Cleburne Living Center*, 473 US 432, 442 (1985). Rational basis review would therefore apply. And Rothrock's decision to require new medical evaluations before issuing medical restrictions and passes rather than relying on five-year-old reports provides at least a rational basis.

The motion by Defendants to dismiss the equal protection claim against them is granted.  The equal protection claim by Plaintiff is dismissed with prejudice.

f.   Negligence

Plaintiff alleges that Defendants were negligent in providing him with medical care and treatment.

To the extent that he brings this claim under §1983, he fails to state a claim because, as explained above, neither medical malpractice nor negligent treatment presents an issue of federal constitutional dimension. *Mendoza*, 989 F2d at 195. To the extent that he brings this claim under state law, it's barred for two reasons.

*First*, Defendants have statutory immunity under the Texas Tort Claims Act, which governs tort claims against the state and its employees. Relevant here, the TTCA provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.

Texas Civ Prac & Rem Code §101.106(f). This provision "foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of employment." *Franka v Velasquez,* 332 SW3d 367, 381 (Tex 2011). It applies even if sovereign immunity bars the claim against the government unit. *Texas Department of Aging & Disability Services v. Cannon*, 453 SW3d 411, 415 (Tex 2015). If an employee moves for dismissal on this basis, the action must be dismissed. Tex Civ Prac & Rem Code §101.106(f).

Under the TCCA, *scope of employment* means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." Tex Civ Prac & Rem Code §101.001(5). "An official acts within the scope of her authority if she is discharging the duties generally

16

assigned to her." *City of Lancaster v Chambers*, 883 SW2d 650, 658 (Tex 1994). When it's undisputed that the government employee was acting in the course and scope of her employment, a claim against that employee must be dismissed under §101.106(f). See *Carr v City of Spring Valley Village*, 2019 WL 1276100, *13 (SD Tex).

It's undisputed here that Defendants were acting within the scope of their employment when addressing Plaintiff's requests for medical care and treatment. Any actions they took with respect to Plaintiff occurred while they were engaged in that employment. Plaintiff's claims against Defendants for medical negligence are therefore barred by the TTCA.

*Second*, Plaintiff's medical negligence claims don't fall within the waiver of immunity set out in the TTCA. The TTCA waives governmental immunity for only three types of claims, being "(1) injury caused by an employee's use of a motor-driven vehicle within the scope of his employment; (2) injury caused by a condition or use of tangible personal or real property; and (3) premises defects." *Morgan v City of Alvin*, 175 SW3d 408, 418 (Tex App–Houston [1st Dist] 2004, no pet), citing Tex Civ Prac & Rem Code §101.021–.022. Plaintiff's medical negligence claims don't fall within any of these exceptions.

The motion by Defendants to dismiss the negligence claims against them will be granted. The negligence claims by Plaintiff will be dismissed with prejudice.

g.   Falsifying medical records

Plaintiff alleges that Wilson falsified his medical records to cover up the alleged denials of medical care. While jurisdiction over Wilson is lacking due to the lack of service of process, the claims against her are also subject to dismissal.

Falsifying prison records, standing alone, doesn't violate the Constitution. For example, see *Henderson v Buttross*, 2017 WL 2391806, *3 (WD Tex); *Fountain v Thaler*, 2015 WL 5168775, *11 (ED Tex), citing *Hernandez v Estelle*, 788 F2d 1154, 1158 (5th Cir 1986). Conclusory

allegations that classification or medical records have been "falsified" are thus insufficient to state a claim upon which relief can be granted. See *Knighten v Ott,* 2003 WL 21355964, *1 (5th Cir, *per curiam*). Instead, a prisoner must allege how the falsified records themselves violated his constitutional rights. See *Gravely v Speranza,* 219 F Appx 213, 215 (3d Cir 2007, *per curiam*) (affirming dismissal of claims based on falsified documents when prisoner "did not give any indication as to what documents he believed were falsified or how their alleged falsification violated his constitutional rights"); *Fountain,* 2015 WL 5168775 at * 11 (dismissing claim based on falsification of grievance records when prisoner failed to show that falsification "violated any right protected by the Constitution").

Plaintiff doesn't allege facts showing that he was denied medical care because of the alleged falsifications of his medical records. Instead, he affirmatively alleges that his medical records were falsified after the fact to cover up prior violations of his right to proper medical care. Any constitutional violations therefore predated the change in the records and did not, in and of themselves, violate his constitutional rights.

The claims by Plaintiff based on falsification of records are dismissed with prejudice for failing to state a claim upon which relief can be granted.

### h.   Qualified immunity

Finally, Defendants raise the affirmative defense of qualified immunity. This protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v Callahan*, 555 US 223, 231 (2009), quoting *Harlow v Fitzgerald*, 457 US 800, 818 (1982). Its availability as a defense ultimately "turns only upon the objective reasonableness of the defendant's acts." *Thompson v Upshur County*, 245 F3d 447, 457 (5th Cir 2001).

Analysis of qualified immunity involves two inquiries. See *Aguirre v City of San Antonio*, 995 F3d 395, 406 (5th Cir 2021); see also *Batyukova v Doege*, 994 F3d 717, 724–25 (5th Cir 2021). A court first asks "whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a federal right." *Aguirre*, 995 F3d at 406, quoting *Tolan v Cotton*, 572 US 650, 655–56 (2014, *per curiam*). Second, it determines whether the allegedly wrongful conduct violated clearly established law. *Tolan*, 572 US at 656, citing *Hope v Pelzer*, 536 US 730, 739 (2002).

As explained above, Plaintiff doesn't sufficiently allege facts showing that any Defendant violated his constitutional rights. Consideration of the second question is thus unnecessary.

The motion by Defendants to dismiss the claims against them based on qualified immunity will be granted. Dkt 30. The claims by Plaintiff against Defendants are dismissed with prejudice as barred by qualified immunity.

4. Conclusion

The motion to dismiss by Defendants is GRANTED. Dkt 30.

The civil-rights action by Plaintiff Julian Mars McKithan is DISMISSED WITH PREJUDICE. Dkt 1.

Any pending motions are DENIED AS MOOT.

Final judgment will be separately entered.

SO ORDERED.

Signed on __March 13, 2026__, at Houston, Texas.

_____
Honorable Charles Eskridge
United States District Judge